IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEVELOPERS DIVERSIFIED OF )
TENNESSEE, INC., n/k/a DDR Corp., )
)
        Plaintiff, )
)
)
vs. ) CASE NO. 3:04-0015
) JUDGE KNOWLES
)
)
TOKIO FIRE and MARINE )
INSURANCE CO., )
)
        Defendant. )

## MEMORANDUM OPINION

### I. Introduction and Background

This matter is before the Court upon Cross-Motions for Summary Judgment filed by Plaintiff[1] and Defendant. Docket Nos. 286, 287, 295. This action arises from the partial collapse of the roof of a building in Brentwood, Tennessee, owned and managed by Plaintiff and leased to Defendant's insured, The Sports Authority, Inc. ("SA"). Tokio paid SA approximately $2 million for damage to SA's merchandise, and it became apparent that Tokio would seek the reimbursement of this amount from Plaintiff. Rather than waiting to be sued by Tokio, Plaintiff filed a declaratory judgment action, seeking a declaration that it is not liable to Tokio. Tokio subsequently filed a counter-claim against Plaintiff, seeking to recover, under a subrogation theory amounts it paid to SA.

---

[1] Plaintiff was formerly known as Developers Diversified of Tennessee, Inc., but it is now known as "DDR Corp." Plaintiff is sometimes referred to herein as "DD" or "DDR."

As will be discussed in greater detail below, this case has previously been to the Sixth Circuit. *Developers Diversified of Tennessee, Inc., v. The Tokio Marine & Fire Insurance Company,* 415 Fed. Appx. 653 (6th Cir. 2011). The following "Background" information was set forth in the Sixth Circuit's decision:

> Sports Authority entered into a lease agreement in January 1998 with Hendon Investments (Hendon) to lease retail space in a Brentwood, Tennessee, yet-to-be-built shopping center. Hendon assigned the lease to Service Hendon Cool Springs Associates (Service Hendon). Service Hendon retained an architectural firm, Pieper, O'Brien, Herr Architects, Ltd. (Pieper), to design the shopping center, including Sports Authority's space. The Lease provided that Sports Authority's building would be designed and constructed in general accordance with prototypical drawings and specifications submitted by Sports Authority. Pieper submitted drawings and specifications, which Sports Authority approved. Sub-contractor Holland Roofing installed the roof.
>
> Construction of the shopping center was completed, and Sports Authority occupied the leased premises in September 1998. Plaintiff DD entered into a purchase and sale agreement in July 1998 to acquire the shopping center from Service Hendon, although the transaction did not close until after construction was completed in April 2000. Pursuant to the agreement, Service Hendon assigned and DD assumed Sports Authority's lease. The "Assignment and Assumption of Leases" between DDR and Service Hendon provided that DD "assumes and agrees to perform all of the terms, covenants, obligations and conditions of the Lease . . . in respect of the period from and after the date of this Assignment."
>
> After acquiring the shopping center in April 2000, DD, through a property management company, retained Foresight Consulting, Inc. and CHM Roof Consultants to inspect the roof. Neither reported any problem or defect to DD.
>
> Following a severe rain storm in May 2003, part of the roof over Sports Authority's store collapsed and merchandise was damaged. Sports Authority's insurer, Defendant Tokio, paid approximately $2 million for that loss and sought reimbursement from DD. DD then filed the instant declaratory judgment action. Tokio answered

and counter-claimed, asserting that DD breached the Lease by
failing to keep, maintain and repair the roof, gutters and
downspouts, and that Tokio suffered a loss of $2,056,073 due to
DDR's acts, omissions, neglect and negligence.

The district court initially denied the parties' cross-motions for
summary judgment. Subsequently, discovery revealed that DDR
had no role in the design or construction of the building or roof,
and the parties again moved for summary judgment.

In its second summary judgment motion, Tokio's theories of
liability were that DDR had defaulted under the Lease and that the
default caused the partial roof collapse. The Lease obligated the
landlord to build in accordance with the specifications, and placed
sole responsibility on the landlord to perform "all maintenance,
replacement and repair to the roof." DDR responded that it had
not defaulted under the Lease as a matter of law because
Tennessee law required notice of a defect and an opportunity to
cure before liability could be imposed on a landlord, and that in
any event, no action or inaction on its part caused the roof to
collapse. Relying
on *Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Assoc.,
Ltd.*, 799 S.W.2d 239 (Tenn. Ct. App. 1990), the district court held
that a commercial lessor must have actual notice of defects for
which it bears responsibility under the lease and a reasonable time
to cure those defects before liability can be imposed, and granted
summary judgment in DDR's favor. The district court did not
reach the causation issue.

Tokio moved to reopen and reargue the motions for summary
judgment, asserting that the district court failed to recognize the
separate and independent provisions of the Lease imposing duties
on the landlord that were not present in *Marshalls*. The court
declined to grant reconsideration.

415 Fed. Appx. at 654-56.

## II. The Prior Summary Judgment Motions in this Court

The parties filed an initial set of Motions for Summary Judgment, which are generally irrelevant to the issues now before the Court. Subsequently, the parties filed a second round of Motions for Summary Judgment. In its Memorandum Opinion, this Court summarized the

3

positions of the parties as follows:

> Tokio's argument is fairly simple. Tokio argues that the Court should "apply the plain language of the written Lease." Tokio argues that the Building was not constructed in accordance with the approved drawings and specifications (in violation of Sections 6F and 12A(ii)), and that Plaintiff did not perform maintenance replacement and repair to the roof that was necessary to maintain the Building in a safe, dry and tenantable condition (in violation of Section 14A(i). Tokio further argues that, under Section 14A(iv), Plaintiff is responsible for "all maintenance, replacement and repair due to the acts, omissions, neglect or negligence of Landlord, or any other owner, occupant or tenant in the Shopping Center and each of their employees, agents or contractors." Tokio argues that Holland Roofing, a contractor or subcontractor of the Landlord, constructed the roof with the defects discussed above. Tokio argues that Plaintiff, as Landlord, has taken responsibility for the acts, omissions, neglect or negligence of the contractors and subcontractors of the previous Landlords, Service-Hendon and/or Hendon. Furthermore, Tokio argues that, under Section 14A(vii), Plaintiff is responsible for the costs of correcting defects in or inadequacies of the initial design or construction of the Building. Tokio essentially argues that Plaintiff had an obligation to review the initial drawings and compare the roof as it was built to these drawings. Had Plaintiff done so, according to Tokio, Plaintiff would have discovered the "defects" in the construction of the Building. Finally, Tokio argues that the roof did not meet the Standard Building Code and "was not done in a workmanlike manner."
>
> . . .
>
> Plaintiff's argument, essentially, is that it owes no legal duty for original design or construction errors of which it had no notice. Plaintiff argues that, under Tennessee law, it is not responsible or legally liable for the negligence in the original construction of the Building, which it purchased after the Building was completed and constructed. Moreover, Plaintiff argues that there is no evidence of gross negligence or default and that there was no default, as it had no knowledge of any defective condition relating to the original architectural and engineering design or construction of the roof and Building.

Docket No. 232, p. 11-12 (citations omitted).

4

The Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Motion for Summary Judgment. Docket No. 232. In ruling upon those Motions, the Court relied primarily on *Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Associates, Ltd.*, 799 S.W. 2d 239 (Tenn. Ct. App. 1990). The Court interpreted *Marshalls* as requiring that a commercial lessor must have actual notice of defects for which it bears responsibility under a Lease and a reasonable time to cure those defects before liability can be imposed. There was (and is) no question that DDR did not have actual notice of the alleged defects.

Although it was not emphasized, the parties raised the causation issue in their arguments to this Court concerning the prior summary judgment Motions. DDR stated:

> This motion [for summary judgment] is addressed to the issue of default and gross negligence, not causation. Developers reserves the right to argue the lack of causation at trial.

Docket No. 178, p. 2 n.3.

In a section of its brief that was not even a page long, Tokio argued that "Developers' default caused the roof collapse," citing the Affidavit of David Wright and "Exhibit 6."[2] Docket No. 180, p. 13. With regard to the causation issue, Mr. Wright stated:

> 11. The ponding and result in roof collapse was not caused by an extreme weather event.
>
> 12. The defective roof conditions caused ponding and resultant collapse of the subject roof.

Docket No. 181, p. 3.

In DDR's Response to Tokio's previous summary judgment Motion, DDR argued that Mr. Tom Allen, Tokio's expert in the field of hydrology and hydraulic engineering, had

---

[2] The Court has been unable to locate "Exhibit 6."

5

concluded that there was a maximum of 6 inches total of water on the roof near the area of the collapse, but he "cannot and refused to provide opinions as to the structural stability of the roof with 6" of water." Docket No. 199, p. 3. DDR continued that Tokio's structural expert, David Wright, was so qualified and admitted that 6 inches of water was not sufficient to cause the roof to collapse. *Id*. DDR argued that Mr. Wright essentially just assumed there was 14 inches of water on the roof "as that is the minimum amount necessary to cause structural failure of the underlying steel members and a collapse. . . . ." He admitted, however, that "there is no evidence to support this amount of water." *Id*.

DDR's experts concluded that the maximum predicted depth of water on the roof would have been .5 feet (6 inches). Docket No. 201-4, p. 16. DDR's experts continued:

> It is apparent that 6 inches of water (31.2 PSF) on the roof would over stress the structural system but clearly this overload (even if uniformly distributed over the entire portion of the roof that fell – which it was not) would not be sufficient to have caused the collapse. It represents an overstress of about 22%. Failure would not result from this condition until the overload increased to 66%, as stated above.

*Id*., p. 19.

Thus, the prior Motions for Summary Judgment revealed a genuine issue as to material fact concerning whether any acts or omissions of DDR caused the roof to collapse. Because of this Court's interpretation of *Marshalls*, however, it was unnecessary for this Court to consider the issues of causation or whether Plaintiff's actions or inactions were breaches of the Lease.

### III. The Sixth Circuit Decision

Tokio appealed this Court's ruling to the Sixth Circuit, which affirmed in part, reversed

6

Case 3:04-cv-00015 Document 341 Filed 03/12/14 Page 6 of 14 PageID #: 6146

in part, and remanded the case to this Court. The Sixth Circuit summarized the parties' positions on appeal as follows:

> Tokio argues on appeal that DD defaulted under the terms of its Lease when DD 1) failed to maintain and repair the tenant's roof, as required by Lease ¶ 14(A)(i); 2) failed to remediate construction defects as required by Lease ¶ 14(a)(vii); 3) failed to ensure that all maintenance performed was performed in a good, workmanlike manner, as mandated by Lease ¶ 14(A); 4) refused to assume responsibility for its roof inspectors' negligence, as required by Lease ¶ 14(A)(iv); and 5) failed to comply with government regulations mandated by maintaining the building in Code-volative state, contrary to Lease ¶¶ 17 and 14. Finally, Tokio asserts that DD is liable for the failure to construct the tenant's building in accordance with the agreed-to Lease specifications as required by Lease ¶¶ 6(F) and 12(A)(ii).
>
> DD responds that it could not have defaulted under any of the above-mentioned Lease provisions as a matter of law because Tennessee law requires that Tokio provide DD notice of any defects in the building and an opportunity to cure those defects before DD can be liable for any default. DD further asserts that it cannot be held liable for the defaults of Service Hendon, the Lease assignor, and that, even assuming default, Tokio has failed to show causation. Neither party disputes that this is a breach-of-contract case and that the language of the Lease governs.

415 Fed. Appx. at 658.

In its decision, the Sixth Circuit initially held that *Marshalls* required only constructive notice, rather than actual notice. The Sixth Circuit further held that *Marshalls* did not preclude Tokio's claims under the Lease itself. The Sixth Circuit summarized its ruling as follows:

> Accordingly, we affirm the district court's order granting DD summary judgment as to Tokio's claim that DD is liable for failure to construct the building in accordance with Lease ¶¶ 6(F) and 12(A)(ii). We reverse and remand for the district court to address the issues whether DD 1) failed to maintain and repair the roof, as required by Lease ¶ 14(A)(i); 2) failed to remediate construction defects as required by Lease ¶ 14(A)(vii); 3) failed to insure that all maintenance performed was performed in a good, workmanlike

7

> manner, as mandated by Lease ¶ 14(A), Subpararaph 5; and 4) was
> required to assume responsibility for its roof inspector's
> negligence, as required by Lease ¶ 14(A)(iv).
>
> We also remand to the district court to decide in the first instance
> whether DD failed to comply with government regulations by
> maintaining the building in a Code-violative state, in contravention
> of Lease ¶¶ 17 and 14.

415 Fed. Appx. at 669.

The Sixth Circuit noted in its decision that it expressed "no opinion as to causation," "leav[ing] that question to the district court on remand." *Id*. at 663.

The Sixth Circuit also concluded that this Court erred in failing to consider Tokio's arguments regarding DDR's potential breaches of the Lease. *Id*. at 664. The Sixth Circuit stated:

> Moreover, to the extent that *Marshalls* bears on the resolution of
> these independent breaches, the district court should read
> *Marshalls* as imposing only a constructive notice requirement. We
> remand for the district court to consider Tokio's arguments in the
> first instance. . . . We express no opinion as to the merits of these
> claims or on issues of causation, and leave those questions to the
> district court on remand.

*Id.*

## IV. The Instant Motions for Summary Judgment

Following the remand, the parties filed the instant Motions for Summary Judgment.

In its current Motion for Summary Judgment, Plaintiff states that it seeks summary judgment "on all of Tokio's claims . . . ." DDR argues that Tokio will be unable to prove one or more essential elements of its breach of contract action. DDR argues that it had no actual notice or constructive notice of any defective conditions.

Additionally, the parties' discussion of the causation issue has continued in the materials

8

Case 3:04-cv-00015 Document 341 Filed 03/12/14 Page 8 of 14 PageID #: 6148

they have filed since the case was remanded from the Sixth Circuit.  DDR also argues:

> Furthermore, aside from the fact that Tokio's and DDR's experts disagree as to what caused the partial collapse, there is also *significant disagreement between Tokio's own experts.*  Moreover, Tokio's main structural engineer expert, Wright, has repeatedly changed his own opinions, calculations and reports.  To date, Wright has issued multiple conflicting reports.  He admits that his initial reports contains multiple errors and mistakes.

Docket No. 288, p. 20 n. 15.

In its Response to DDR's Motion, Tokio first argues that DDR had constructive notice of a number of defects with regard to the roof, because they existed for more than 36 months after DDR purchased the Shopping Center and before the roof collapsed.  Tokio further argues:

> Even if DDR did not have constructive notice of those defects, which is expressly denied, Tokio's arguments respecting DDR's failures (1) to assume responsibility for its roof inspectors' negligence or neglect (Paragraph 14(A)(iv)), (2) to remediate original construction defects (Paragraph 14(A)(vii)), (3) to insure that all maintenance performed on its behalf was performed in a good, workman-like manner (Lease Paragraph 14 (¶ 5 at p. 27)), and (4) to comply with the Building Code (Lease Paragraphs 17 and 14) (¶ 5 at p. 27)) do not require a showing that DDR had constructive notice of the roof defects.  *And even if the Court determines that those arguments do require Tokio to prove that DDR had constructive notice of the roof defects, because constructive notice is a question of fact, this matter must, at a minimum, be put over for trial.*

Docket No. 309, p. 2 (emphasis added).

In its pending Motion for Summary Judgment, Plaintiff again relies upon the opinion of its expert Mr. Dickey, and cites a "Supplemental Joint Report" of Mr. Dickey and DDR's Hydrologist, Mr. James Douglas, which states:

> It is apparent that the maximum 6 inches of water (31.2 PSF) that may have accumulated on the roof for the SA storm would overstress the structural system, but clearly this overload would

9

> not be sufficient to have caused the collapse unless there were structural deficiencies in the construction and/or severe wind effects from the violent storm.

Docket No, 289, p. 22.

## V. Analysis

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38

10

(6th Cir. 1999).

As discussed above, the Sixth Circuit remanded this case to this Court for consideration of three issues: (1) whether Plaintiff had constructive notice of the alleged roofing defects; (2) whether Plaintiff breached the Lease provisions alleged by Defendant; and (3) whether Plaintiff's alleged breaches caused damage to Defendant.

Defendant has taken the position that "constructive notice is a question of fact," which, under certain conditions, should be "put over for trial." Docket No. 309, p. 2.

The issue of whether Plaintiff breached the Lease provisions is one that the Court must consider, pursuant to the Sixth Circuit's directions, in conjunction with the constructive notice and causation issues. The Court believes that all these issues are inextricably intertwined.

Moreover, there are genuine issues as to material facts concerning causation. The Sixth Circuit emphasized that it expressed no opinion as to the causation issue. Furthermore, Plaintiff recognizes that causation is normally a question for the fact-finder. Docket No. 305, p. 6.

Tokio also makes a legal argument that the "Lease causation standard" requires the Court to determine if DDR's failure to install secondary drains was a contributing factor in the roof's collapse. Docket No. 289, p. 25-29. Defendant's argument here is based upon Article 28A of the Lease, which provides in relevant part:

> Tenant's Indemnification and Insurance.
>
> A. Tenant's Indemnification. During the Lease Term, Tenant shall indemnify, defend (by counsel reasonably acceptable to Landlord), release and hold Landlord and Landlord's partners, agents, employees . . . and assignees, harmless against all penalties, claims or demands of whatsoever nature arising within the Tenant's Building, except those which shall result, *in whole or in part*, *directly or indirectly*, from the default or gross negligence of Landlord, Landlord's partners, agents, employees, assignees or

11

> Landlord's ground lessor, if any. Landlord shall indemnify, defend (by counsel reasonably acceptable to Tenant), release and hold harmless Tenant and Tenant's subsidiaries, and each of their officers, directors, agents, employees, assignees and sub-tenants against all penalties, claims or demands of whatsoever nature arising within Tenant's Building which result from such default or negligence of Landlord, Landlord's partners, agents, employees and assignees or Landlord's ground lessor, if any.

(Emphasis added.)

Defendant argues that the language "in whole or in part, directly or indirectly" implicates any cause that contributes to an injury, not just the predominate cause. Docket No. 289, p. 25. Essentially, Defendant argues that DDR is liable to Defendant "if DDR's failure to install secondary drains on the roof *contributed – in any way –* to the roof's collapse." *Id.*, p. 26 (emphasis added).

Article 28A of the Lease contains two sentences, the first of which relates to Tenant's indemnification of Landlord and the second of which relates to Landlord's indemnification of Tenant. In the first sentence, SA (and by extension Tokio) agrees to hold Landlord (DDR) harmless against any claims arising within Tenant's Building, "except those which shall result, in whole or in part, directly or indirectly, from the gross negligence of Landlord . . . ." In the second sentence, Landlord (DDR) agrees to indemnify Tenant SA (and by extension Tokio) against penalties, claims, or demands "which result from such default or negligence of Landlord."

The language "in whole or in part, directly or indirectly" is found only in the first sentence, which pertains to Tenant's indemnification of Landlord. That language has no application to Landlord's indemnification of Tenant. Therefore, Article 28A of the Lease does not provide that Plaintiff is liable if its default caused, in whole or in part, directly or indirectly,

12

the roof to collapse.[3]

The appropriate standard for determining damages in a breach of contract case is set forth in *Missouri Portland Cement Co. v. J.A. Jones Construction Co.,* 323 F. Supp. 242, 246 (M. D. Tenn. 1970) as follows:

> Under Tennessee law, a plaintiff is entitled to recover damages for breach of contract if the "*** defendant's breach of contract was the direct and proximate cause of the damages which plaintiff has allegedly sustained, without concurring or contributing fault on the part of the plaintiff.

*See also Baker v. Riverside Church of God,* 453 S.W.2d 801, 809 *cert denied, id.* ("Damages for breaches of contracts are such as are incidental to or directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties.") (citations omitted); *Walker & Langford v. Ellis & Moore,* 33 Tenn. (1 Sneed) 515, 1853 W.L. 2312, *4 ("In actions of contract, generally speaking, the damages are limited to the natural and proximate consequences of the breach complained of, and damages remotely or consequentially resulting therefrom or merely speculative damages, cannot be claimed."). Thus, Defendant is not entitled to a judgment as a matter of law simply because its actions or inactions "in whole or in part, directly or indirectly" may have caused the roof to collapse.

Neither party has established that there are no genuine issues as to material fact and, therefore, neither party is entitled to a judgment as a matter of law.

For the foregoing reasons, the instant Motions for Summary Judgment (Docket Nos. 286,

---

[3] The Court notes that Defendant previously took the position that Article 28 of the Lease "is clearly intended to cover the treatment of third-party claims" and therefore "does not apply to a contractual dispute between the Landlord and Tenant under the Lease." Docket No. 45, p. 7.

13

287, 295) will be DENIED.

IT IS SO ORDERED.

_____
E. Clifton Knowles
United States Magistrate Judge