IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEVELOPERS DIVERSIFIED of TENNESSEE, INC., n/k/a DDR CORP., ) ) ) Plaintiff/Counter-Defendant, ) ) ) vs. ) ) ) ) TOKIO MARINE & FIRE INSURANCE ) CO., ) ) Defendant/Counter-Plaintiff. ) | CASE NO. 3:04-0015 JUDGE KNOWLES |

## ORDER

This matter is before the Court upon Plaintiff's "Renewed Motion for Sanctions Due to Tokio's Negligent Spoliation of Key Evidence." Docket No. 362. The Court previously denied DDR's initial Motion for Sanctions (Docket No. 314) on grounds that part of DDR's request for relief was an adverse jury instruction regarding the allegedly spoliated evidence. Docket No. 343. At the time of the initial denial, the Court noted that there was a pending Motion filed by Tokio to allow a jury trial in this action. In view of that fact, the Court denied the initial Motion for Sanctions, with leave to refile it after a decision on the Motion for a jury trial. The Court stated that it made little sense to discuss an adverse evidentiary inference in a bench trial. Thereafter, DDR filed the instant "Renewed Motion for Sanctions" (Docket No. 362), which essentially incorporated its prior Motion (Docket No. 314) and its prior Reply (Docket No. 331). Tokio has filed a Response in Opposition to the Renewed Motion, which essentially adopted its

initial Response. Docket No. 363, *adopting* Docket No. 326.

This action involves the partial collapse of the roof on a commercial building that occurred on May 5, 2003. DDR owned the building, which was leased to Sports Authority, Inc. At the time of the collapse, Tokio insured losses to Sports Authority's merchandise and Allianz insured Sports Authority for property damage to the building. Tokio paid Sports Authority approximately $2 million for the damage to its merchandise, and Tokio has brought a subrogation claim against DDR, arguing that DDR breached its contract with Sports Authority by failing to properly maintain the roof as Tokio avers it was required to do under the lease.

In the instant Motion, DDR avers that Tokio negligently allowed evidence relevant to its breach of contract claims to be destroyed, namely: (1) the collapsed roof materials, and (2) Sports Authority's records/documents concerning the subject store, including financial information. DDR requests that the Court impose sanctions on Tokio which would: (1) exclude testimony by Tokio's experts concerning the cause of the partial roof collapse and damages, and/or (2) impose evidentiary inferences that the spoliated evidence would have been favorable to DDR.

DDR avers in the instant Motion that Tokio and Allianz both received notice of claims by Sports Authority on May 5, 2003, the day of the collapse. The next day, Sports Authority advised DDR and DDR's property insurer "to remove themselves" from the investigation of the matter, citing a provision in the lease requiring Sports Authority to insure and repair the roof of the building following any such damage.

Sports Authority and its insurer Allianz handled the roof rebuild project after the 2003 partial roof collapse. Allianz paid for the cost of the roof repairs under its property damage policy with Sports Authority.

DDR asserts that Sports Authority hired MMSF as the general contractor for the roof rebuild. MMSF hired a demolition company, Dem Tech, Inc., on May 12, 2003, to remove and destroy the collapsed roof materials. On May 15, 2003, Dem Tech removed all of the collapsed roof materials including the key steel "joist girder" that failed and all the other materials and debris. The collapsed steel was first "torch-cut," put into scrap containers, and sent to a steel smelter where it was completely melted down and destroyed. The other collapsed roof materials were also placed in trash containers, removed and destroyed.

DDR avers that Tokio's expert structural engineer, David Wright, has a causation theory that is based upon two purely speculative assumptions: (1) that unspecified "debris" on the roof of the building must have blocked or clogged both "scuppers" located at the rear "D6" wall of the building which, in turn; (2) caused an assumed amount of excessive water to accumulate on the roof. DDR argues that Mr. Wright simply assumes that a minimum of 18 inches of water accumulated on the roof, because the roof collapsed. According to DDR, Mr. Wright opines that the presumed amount of water is the only reason the subject steel joist girder (connected to the rear wall) failed and collapsed.

DDR contends that the cause of the partial roof collapse remains unclear and cannot be determined now with certainty because Tokio negligently "allowed" the key evidence (*i.e.*, all of the collapsed steel members and all of the collapsed roof materials) to be destroyed.

DDR avers that Sports Authority notified Tokio of the partial roof collapse the same day that it occurred, May 5, 2003. Both Tokio and Sports Authority hired an agent to investigate the claim the same day. That agent inspected the roof collapse on May 6, 2003, and took photographs on the site on May 6-7, 2003. DDR avers that Tokio knew that one possible theory

3

of the cause of the collapse was that an excessive weight load from water accumulation on the roof may have resulted from a blockage of the drains. DDR continues:

> Nevertheless, Tokio <u>allowed</u> *all* of the collapsed roof materials to be destroyed in May, 2003, *prior* to putting DDR on notice of Tokio's subrogation claim. DDR had no opportunity to do any forensic analysis of any of the collapsed materials. Thus, DDR could not test and analyze the stresses imposed on the failed steel or examine the other collapsed roof materials prior to their destruction. *Tokio first put DDR on notice of its subrogated claim in August, 2003, months after Tokio allowed all of the collapsed roof materials to be destroyed.*

Docket No 314, p. 5-6 (italics original, underlining added).

DDR further argues that its structural engineer, Bill Dickey, has testified that it is effectively impossible to determine with certainty what caused the roof to partially collapse absent the key physical evidence that actually failed and collapsed. According to Dickey, if he had been allowed to analyze the collapsed roof materials, "we would know with a high degree of certainty the cause of the collapse . . . ." Docket No. 314, p. 6.

Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Lexington Insurance Co. v. Tubbs*, 2009 WL 1586862 (W.D. Tenn.) (citation omitted). The federal law of spoliation governs cases filed in federal court. *Adkins v. Wolever,* 554 F.3d 650 (6th Cir. 2009) ("*Adkins I*"). *Adkins* explained that "the authority to impose sanctions for spoliated evidence derives from a court's inherent power to control the judicial process." *Id*. at 652.

DDR sets forth a three-part standard adopted by the Sixth Circuit "that must be met by a party seeking an adverse inference instruction . . . ." Docket No. 314, p. 9, *citing Beaven v. U.S.*

4

*Department of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (further citations omitted). The party seeking such an instruction must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed;
>
> (2) that the [evidence was] destroyed "with a culpable state of mind"; and
>
> (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id*.

Tokio argues that DDR cannot show that the evidence was destroyed with a culpable state of mind. Tokio contends that, while negligence alone may be sufficient to justify the imposition of some sanction, "each party should bear the risk of its own negligence." Additionally, Tokio argues if the parties are equally negligent in permitting the destruction of evidence, no sanction is warranted even if the loss of proof were more detrimental to one party than the other because there would be no basis for attempting to restore the evidentiary balance because either party could have protected itself by preventing the spoliation. *In re WRT Energy Securities Litigation*, 246 FRD 185, 196 (S.D. N.Y. 2007). Tokio argues that DDR could have just as easily instructed that the roof materials, which it owned by virtue of its ownership of the building, were retained. Tokio further argues that there is no reason why DDR could not have instructed Sports Authority to retain the collapsed roof materials.

DDR has cited a number of authorities from different courts, including the Sixth Circuit. The controlling case in the Sixth Circuit is *Adkins v. Wolever*, 692 F.3d 499 (6th Cir. 2012) ("*Adkins II*"). An in depth discussion of *Adkins* is, therefore, necessary.

In *Adkins v. Wolever,* 554 F.3d 650 (6th Cir. 2009) (*Adkins I*), a prisoner filed suit against a guard for assault. Apparently, there was stationary video footage of the area where the alleged assault occurred, and there were color photographs of plaintiff's injuries. During discovery, plaintiff asked defendant to produce any photographs or video footage. Prison officials could not locate the video footage or the color photographs, which had been lost or destroyed. Plaintiff, therefore, sought a permissive instruction that the jury could presume that the missing video and color photograph evidence would be favorable to Adkins. The district court had applied state law which required Adkins to demonstrate that the spoliated evidence was under defendant's control, which it undisputedly was not. The original panel of the Sixth Circuit that considered the appeal affirmed the district court's ruling.

On en banc review by the Sixth Circuit, that court determined that the federal law of spoliation applied, not state law. Defendant also argued before the Sixth Circuit that he should not be subject to spoliation sanctions because he did not control the evidence at issue. The Sixth Circuit stated, "And he might be right, if, as he suggests, the preservation of relevant evidence was entirely beyond his control." 554 F.3d at 653. The Sixth Circuit then remanded the case to the district court stating, "[W]e leave to the district court the exercise of its broad discretion to decide if [defendant] should be subject to any form of spoliation sanctions despite the fact that he was not the prison records custodian." *Id*.

On remand the district court, applying federal law, again concluded that Adkins was not entitled to an adverse inference instruction because of the alleged spoliation. Adkins again appealed to the Sixth Circuit, which, in *Adkins II*, upheld the district court's decision. *Adkins v. Wolever,* 692 F.3d 499 (6th Cir. 2012).

In its opinion, the Sixth Circuit stated in relevant part:

> The district court concluded that Adkins had not established the requirements for a sanction because the preservation of the evidence "was entirely beyond Officer Wolever's control."

692 F.3d at 504.

The court referred to the three-part test set forth in *Beaven,* and defendant's argument that Adkins could not establish the second requirement, *i.e.,* whether the records were destroyed with a culpable state of mind. The *Adkins II* court stated:

> To warrant a spoliation sanction, the party seeking the sanction must show that the evidence was destroyed with a culpable state of mind. This factor is satisfied "by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." . . . The district court concluded that "[i]n the absence of any evidence that Wolever had control or access over these items, there is no basis to assert that Wolever had any culpability for the loss of the items." Because the record does not indicate that the district court clearly erred in determining that Wolever had no culpability for the loss of the surveillance video, we affirm.
>
> . . .
>
> Conceding that negligence is sufficient to find culpability, Wolever denies that his conduct constituted negligence. Wolever insists that any burden he had was met because the prison's retention policy required it to maintain the records. . . .
>
> Adkins insist that a sanction was proper even though Wolever was not personally responsible for the instruction of the evidence. . . . .
>
> While the district court could have followed other district courts and found Wolever culpable even though the prison, not Wolever lost the evidence, the case law supporting such a finding does not *require* the court to find that level of negligence. *The ultimate determination of culpability is within the district court's discretion so long as it is not a clearly erroneous interpretation of the facts*.
>
> The district court reviewed the evidence and concluded that

> Wolever was not culpable because he had no control over the evidence. This conclusion was not clearly erroneous. . . .
>
> "[A] fact-intensive inquiry into [Wolever's] degree of fault under the circumstances" could reasonably generate the conclusion that Wolever was innocent of any destruction or loss.

*Id*. at 504-06 (emphasis added).

Tokio relies upon the Sixth Circuit's decision in *Arch Insurance Co. v. Broan-NuTone*, 509 Fed. Appx. 453 (6th Cir. 2012). Docket No. 314, p. 10. In *Broan-NuTone*, plaintiff brought a subrogation action against defendant, alleging that its insured had been damaged by a fire which was caused by a defective fan/light assembly manufactured by defendant. Approximately six weeks after the fire occurred, experts from both sides conducted "a formal site inspection." Evidence was collected, including the fan/light assembly that was the target of the investigation. Both parties' experts participated in the inspection and removal of the fan/light assembly and associated wiring from the scene. The evidence, however, was taken into custody by an engineering firm that had been retained by plaintiff's insured to investigate the fire. Representatives of both parties also attended a second inspection of the physical evidence.

Approximately seven months after the fire, a representative of plaintiff's insured authorized the engineering firm to discard the evidence, without first consulting either plaintiff or defendant.

Under the circumstances, the district court gave a permissive adverse-inference jury instruction, and the Sixth Circuit upheld that ruling. The *Broan-NuTone* court recognized that, in the context of spoliation sanctions, adverse-inference instructions are typically permissive, in that they allow, but do not require, the fact finder to infer a given fact. The court further stated, "A

8

permissive instruction is particularly appropriate if the evidence was not intentionally destroyed." 509 Fed. Appx. at 459 (citations omitted).

*Broan-NuTone* is readily distinguishable from the case at bar. There, while the district court had concluded that plaintiff was negligent in allowing the fan/light assembly to be destroyed, plaintiff did not challenge that conclusion in the Sixth Circuit. In fact, plaintiff agreed that some spoliation sanction was proper; it simply argued that the district court's adverse inference instruction was too severe. Additionally, in *Broan-NuTone*, the evidence had been destroyed at the authorization of a third-party administrator who represented plaintiff's insured.

In the case at bar, as in *Adkins II*, Tokio had no control over the collapsed roof materials. The building itself, of which the collapsed roof materials were a part, was owned by DDR. It is difficult to believe that DDR did not realize the possibility that the roof collapse would lead to litigation. Under the circumstances, even if Tokio had been negligent in somehow allowing the collapsed roof materials to be destroyed, DDR was equally negligent.

Moreover, DDR's arguments that Tokio "allowed" the roof materials to be destroyed assumes that Tokio could have taken steps to prevent the destruction of the materials. As the record shows, however, the day after the roof collapse, Sports Authority directed that other parties remove themselves from the investigation, since Sports Authority had the obligation to repair the roof.

Finally, even if *Broan-NuTone* dictated a different result, the spoliation sanction approved by the Sixth Circuit in that case was the giving of a permissive adverse jury instruction. The Court cannot give an adverse jury instruction in the case at bar, because this is a bench trial, not a

9

jury trial, and the Court will not be giving any instructions at all.[1]

While DDR's Motion also seeks the sanction of excluding Tokio's expert witnesses, it does not discuss this issue in any detail. That sanction, however, would be unduly harsh under the circumstances. In at least some of the cases cited by DDR, evidence was destroyed after representatives of one party viewed it, such that the other party could not examine it. In the case at bar, neither party was able to examine the collapsed roofing materials. There is no indication in the record that Tokio's expert(s) had access to any evidence that DDR's expert(s) did not. Prohibiting Tokio's experts from testifying would be tantamount to a ruling in favor of DDR.

As discussed above, DDR also claims that Tokio negligently allowed Sports Authority's records/documents, including financial information concerning the subject store, to be destroyed. Docket No. 314, p. 1. In the instant Motion, however, DDR focuses entirely upon the "key evidence" relating to the collapsed roof materials. While DDR mentions evidence involving financial information as being spoliated, it does not discuss the spoliation argument with regard to documents beyond stating imply, "Tokio also negligently allowed Sports Authority to destroy virtually all relevant documents concerning the subject store." Docket No. 314, p. 5. For this reason alone, DDR's Motion with regard to the financial documents should be denied.

In its Response to the initial Motion, however, Tokio discussed the "profit and losses

---

[1] DDR cites one case for the proposition that an adverse instruction is appropriate in a non-jury case. Docket No. 314, p. 18, *citing Lexington Insurance Co. v. Tubbs*, 2009 WL 1586862 (W.D. Tenn.). The *Lexington* Court did state in part, "Although this is a non-jury trial, Defendant is entitled to a negative inference against Plaintiff that the chair and lamp would have provided favorable evidence to Defendant." *Id*. The *Lexington* Court cited no authority for that proposition, and, with all due respect, this Court does not understand how a permissive negative inference instruction could be given in a bench trial, nor does this Court understand how a judge in a bench trial could properly give himself or herself such an instruction.

data" from 2002-03. Tokio argues that any such evidence was destroyed by Sports Authority in the ordinary course of business and, therefore, spoliation sanctions are not appropriate. Tokio points out that it settled with Sports Authority with regard to the value of the damaged merchandise based upon an inventory/stock loss report, not upon profits and losses. Tokio further argues that DDR made its first request for the 2002-03 profit and loss data in 2011, after Sports Authority had discarded the documentation in question as part of a seven-year document retention policy.

In its Reply, DDR attempts to explain why the financial documents are relevant. As with the collapsed roof materials, however, DDR does not explain how the Court could possibly give an adverse inference instruction in a bench trial, nor does DDR explain why Tokio's experts should be prohibited from testifying.

For all the foregoing reasons, the instant Renewed Motion for Sanctions (Docket No. 362) is DENIED.

IT IS SO ORDERED.

                                                            E. Clifton Knowles
                                                            United States Magistrate Judge